**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

DR. ARTUR GUZHAGIN and LORING PARK CHIROPRACTIC CLINIC,

Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Defendant.

Civil No. 07-4650 (JRT/FLN)

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Lawrence H. Crosby and Jay D. Olson, **CROSBY & ASSOCIATES**, Suite 234E, 2277 Highway 36 West, St. Paul, MN 55113-3830, for plaintiffs.

Katherine A. McBride, Leatha G. Wolter, and Tamara L. Rollins, **MEAGHER & GEER, LLP**, Suite 4400, 33 South Sixth Street, Minneapolis, MN 55402, for defendant.

Dr. Artur Guzhagin is a chiropractor employed at Loring Park Chiropractic Clinic ("Loring Park"). Dr. Guzhagin's patients include several individuals insured by defendant State Farm Mutual Automobile Insurance Company ("State Farm"). Dr. Guzhagin and Loring Park filed this action after State Farm refused to reimburse them for their services, alleging breach of contract, negligence, defamation, tortious interference with contract, and product disparagement. State Farm now moves for summary judgment. For the reasons given below, the Court grants State Farm's motion.

## BACKGROUND[1]

State Farm sells no-fault automobile insurance in Minnesota. Its insureds include Hanan Mohamed, Iman Mohamed, Ikran Mohamed, Bashir Hassan, Ahmed Hassan, Abdikadir Said, Saynab Ali, and Borivanh Thammavongsa. Each of these individuals allege that they suffered injuries in automobile accidents, and each submitted claims to State Farm for chiropractic expenses allegedly incurred at Loring Park. The treating chiropractor for each patient was Dr. Guzhagin.

In their briefing, the parties do not address the total claim amounts sought for Dr. Guzhagin's services or the frequency of the alleged treatments. However, the record contains billing records or claim summaries for five of the individual insureds. (McBride Aff., Exs. 5, 10, 12, 15, 18.) This Court's independent review of those documents reveals that the insureds' claims ranged from approximately $2,500 to $8,000, for periods of treatment ranging from three weeks to approximately four months. (*Id.*) In the case of one patient, Loring Park submitted a bill for nearly 150 separate chiropractic charges incurred in less than three months. (McBride Aff., Ex. 5.)

State Farm investigated the validity of these claims. In the case of three of the individual insureds, State Farm concluded that they had made material misrepresentations concerning the circumstances of their automobile accident. A provision of their insurance agreement stated "[t]here is no coverage under this policy if you or any other person insured under this policy has made false statements with the intent to conceal or

[1] For the purposes of this summary judgment motion, the Court considers the facts and evidence in the light most favorable to plaintiffs, the non-moving party.

misrepresent any material fact or circumstance in connection with any claim under this policy." (McBride Aff., Ex. 2 at 34.) Pursuant to this provision, State Farm denied these three claimants' requests for benefits. State Farm sent a letter to Loring Park including the following:

> State Farm fire and Casualty Company has completed its investigation regarding this matter. As a result, all no-fault benefits have been denied for the above-listed patients. Therefore, we will not be making any payments for billings received. Please forward billings you have to your patients for processing.

(McBride Aff., Ex. 1 at Ex. A.)

As to the other five claims, State Farm took sworn depositions of the individual insureds. Those depositions are included in the record, and contain detailed questioning concerning the specifics of their treatment. (McBride Aff., Ex. 1 at Ex. 6, 8, 11, 13, 18.) State Farm points to approximately twenty instances in which it believes that this testimony contradicted Loring Park's billing records. Among those are numerous instances where the insureds appeared to deny receiving particular categories of treatment – or receiving those treatments only on rare occasions – despite the fact that those treatments appear repeatedly in Loring Park's payment request.[2] Plaintiffs contend that

---

[2] Rather than recounting the entire list of these inconsistencies, the Court offers the following illustrations. In one case, the insured indicated in his deposition that he had only received electrical stimulation during his first week of treatment. (McBride Aff., Ex. 6 at 41.) However, the billing records for this patient indicate that he received electrical muscle stimulation for every visit for a twenty-day period, which appeared to include 12 separate visits to Loring Park. (McBride Aff., Ex. 5.) In another case, a patient indicated that on his first visit, Dr. Guzhagin merely checked his arm and leg strength and massaged his neck. (McBride Aff., Ex. 11 at 44-48.) However, the billing records for that visit seek payments for therapeutic procedures, electrical muscle stimulation, acupuncture, and adjustment. (McBride Aff., Ex. 12.)

(Footnote continued on next page.)

in several of these instances State Farm has misconstrued the depositions, but plaintiffs do not specifically address the majority of the alleged contradictions. Based on this evidence, State Farm refused to pay for Loring Park's alleged treatments. For each patient, State Farm sent Loring Park a letter stating the following:

> Our investigation concludes that Loring Park Chiropractic has failed to substantiate the right to payment. Therefore, these bills are not owed by State Farm or our insured and are being denied.

(McBride Aff., Ex. 1 at Ex. B, C, E, F.)[3] In some cases these notices were also sent to the insureds' attorneys, and none of the letters included further details about State Farm's investigations.

Following these denials, one of the individual insureds who was denied benefits because of unsubstantiated treatment filed for arbitration. The arbitrator upheld State Farm's decision to deny all payments for Loring Park's services. (McBride Aff., Ex. 16.) Two more of the insureds have also sought benefits through arbitration, but the parties have not notified the Court of any resolution of those cases.

Dr. Guzhagin and Loring Park contend that they should have been paid for their services, and filed this action in federal district court. They bring claims for breach of contract, "negligent refusal of an insurance company to participate in a statutory scheme providing personal injury protection to insureds within the State of Minnesota,"

(Footnote continued.)

Plaintiffs have offered no explanation for these two particular inconsistencies or many others, other than to generally assert that all billed procedures were performed.

[3] In one case, State Farm denied benefits both for accident-related misrepresentations and unsubstantiated treatment, and sent a notice that also referenced the misrepresentations. (McBride Aff., Ex. 1 at Ex. D.)

defamation, tortious interference with contract, and product disparagement. Plaintiffs' breach of contract claim is based on defendant's insurance contracts with the individual claimants. Plaintiffs allege that they qualify as third-party beneficiaries under those contracts, and are thus able to enforce State Farm's payment obligations. Plaintiffs' defamation, tortious interference, and product disparagement claims are based on the letter communications quoted above.

## ANALYSIS

### I. STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### II. BREACH OF CONTRACT

Plaintiffs allege that by not reimbursing them for their services, State Farm breached its individual contracts with its insureds. Plaintiffs argue that they have standing to enforce these contracts because they qualify as third-party beneficiaries.

State Farm moves for summary judgment on this claim on three grounds: (1) plaintiffs do not meet the requirements for third-party beneficiary status under Minnesota law; (2) the contracts at issue contain an anti-assignment provision, preventing the insureds from assigning their right to payment to plaintiffs; and (3) even if the Court concludes that plaintiffs have enforceable rights under the individual insureds' contracts, any action seeking enforcement of those rights would be subject to mandatory arbitration under Minnesota's No-Fault Automobile Insurance Act ("No-Fault Act"). Because this Court agrees that this claim is subject to mandatory arbitration – requiring the dismissal of these claims even if plaintiffs have the right to enforce the individual insurance contracts – the Court need not address the additional arguments raised by State Farm.

Minnesota's No-Fault Act provides for the "mandatory submission to binding arbitration of all cases at issue where the claim at the commencement of arbitration is in an amount of $10,000 or less . . . for no-fault benefits or comprehensive or collision damage coverage." Minn. Stat. § 65B.525, subd. 1. This arbitration requirement cannot be waived, and deprives courts of subject matter jurisdiction over no-fault claims of $10,000 or less. *See Ill. Farmers Ins. Co. v. Glass Serv. Co.*, 683 N.W.2d 792, 800 (Minn. 2004).

State Farm contends that this principle applies here, because each of the individual claims was for less than $10,000. Plaintiffs have not responded to this argument in their brief, and when questioned at oral argument, plaintiffs merely insisted that the *total*

amount of their assigned claims exceeds $90,000.[4] The Minnesota Supreme Court, however, has squarely rejected that argument. In *Illinois Farmers*, a glass service company argued that because it had been assigned insurance benefits arising out of more than 5700 individual auto glass claims – worth a total of more than $1 million – its consolidated claim for those benefits exceeded $10,000, and was not subject to mandatory arbitration. *Id*. at 804. The court disagreed, holding that the glass service company "[could] not defeat the No-Fault Act's jurisdictional mandate for arbitration by consolidating the claims of . . . individual policyholders." *Id*. While the court noted that it was "mindful" of concerns over the expense of 5700 arbitrations, it concluded that it "must follow the mandate of the No-Fault Act, which unequivocally demands that "*all* claims in an amount of $10,000 or less be arbitrated." *Id*. at 805 (quotation omitted).

Here, too, this Court faces an (alleged) assignee of multiple individual claims, none of which exceeds $10,000. In those circumstances, the Court is bound to follow *Illinois Farmers* in enforcing the "unequivocal" mandate of Minnesota's No-Fault Act. Accordingly, the Court concludes that even if plaintiffs have enforceable rights under the individual insurance contracts, plaintiffs' claim that State Farm breached those contracts by failing to provide benefits is subject to mandatory arbitration under Minnesota law.

[4] Clearly if eight claims totaled more than $90,000, at least one would have to be for more than $10,000. However, plaintiffs indicated that this figure reflected 25 State Farm claims, without explaining the origin or relevance of the additional claims, and without alleging that any particular claim was for more than $10,000. In addition, the Court's independent review of the billing records and claim summaries submitted in the record has uncovered no claim exceeding $10,000.

This Court therefore lacks subject matter jurisdiction over plaintiffs' breach of contract claim and must dismiss that claim without prejudice.

## III. DEFAMATION

Plaintiffs also bring a claim for defamation, based on the statements included in the claim-denial letters quoted above. Plaintiffs note that these letters were sent to the individual insureds and their attorneys, and falsely stated that Dr. Guzhagin had failed to substantiate its right to payment.[5] State Farm argues that plaintiffs have failed to establish all of the elements for a defamation claim, and that even if they could do so, the statements in question were shielded by a qualified privilege. This Court agrees that these comments were shielded by a qualified privilege, and therefore need not address the underlying question of whether they were defamatory.[6]

In order for a defamatory communication to be shielded by a qualified privilege, it "must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause." *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 256-57 (Minn. 1980). "[T]he existence of a privilege results from the court's determination that statements made in particular contexts or on certain occasions should be encouraged

---

[5] Plaintiffs' complaint includes further unspecified allegations about disclosures to third parties. The only specific allegations in plaintiffs' brief and complaint, however, concern the content of State Farm's letters. The Court therefore focuses its analysis on those communications.

[6] The Court notes, however, that it is unclear how the letter concerning the first three claimants – who had been denied benefits for material misrepresentations about their accident – could be construed as defamatory toward plaintiffs.

despite the risk that the statements might be defamatory." *Lewis v. Equitable Life Assurance Soc'y of the U.S.*, 389 N.W.2d 876, 889 (Minn. 1986). "Whether an occasion is a proper one upon which to recognize a privilege is a question of law for the court to determine." *Id*.

Here, State Farm was required under Minnesota law to provide its insureds with the basis for its claim denials. *See* Minn. Stat. § 72A.201, subd. 8(5)(i). That mandate provided it with a "proper occasion" and a "proper motive" for notifying its insureds of its coverage decision. *See Moore & Assocs. v. Metro. Life Ins. Co.*, 604 S.W.2d 487, 490 (Tex. Civ. App. 1980) (applying the qualified privilege to a communication of a claim denial to an insured because that disclosure was legally required). As to reasonable cause, the record contains billing records submitted for one patient that sought more than $8,000 for nearly 150 chiropractic procedures performed over the course of less than three months. (McBride Aff., Ex. 5.) After receiving this request and other similar requests, State Farm conducted an investigation that included the taking of sworn depositions, which thoroughly explored the insureds' treatment histories. The testimony given in these depositions appears inconsistent with Loring Park's billing records in numerous instances, many of which plaintiffs have declined to address. Finally, the Court notes that as to at least one of these disputes, an arbitrator has affirmed State Farm's denial of benefits. In those circumstances, the Court concludes that State Farm's letters to its insureds were supported by reasonable cause. *Cf. Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374, 380 (Minn. 1990) (noting that probable cause did not exist

where an employer had undertaken "no" investigation to substantiate charges concerning an employee's conduct).[7]

Where the qualified privilege applies, a defamation plaintiff may only prevail if he or she can demonstrate actual malice. *Lewis*, 389 N.W.2d at 889. Actual malice requires a showing that statements were "made from ill will and improper motives, or causelessly and wantonly for the purpose of injuring the plaintiff." *Bauer v. State*, 511 N.W.2d 447, 450 (Minn. 1994). "Malice can be shown by extrinsic evidence of personal spite, as well as by intrinsic evidence such as the exaggerated language of the libel, the character of the language used, the mode and extent of the publication, and other matters in excess of the privilege." *Bol v. Cole*, 561 N.W.2d 143, 150 (Minn. 1997). However, actual malice cannot be implied merely "from the fact that the statement was false." *Id.* While malice is generally a question of fact, summary judgment is appropriate where the evidence would be insufficient for a reasonable juror to find for the plaintiff. *See id*. at 150-51.

Here, plaintiffs do not directly address the issue of malice in their brief. However, they broadly contend that they should have been given more information about why State Farm denied payment, and argue that the allegedly defamatory statements themselves suggest negative inferences about plaintiffs' conduct. The Court finds these allegations insufficient as a matter of law to overcome the qualified privilege. As to the lack of

[7] The Court adds that this is not necessarily a final determination about the truth of the insureds' deposition testimony, or a blanket conclusion of wrongdoing on the part of the plaintiffs. The appropriate forum for those questions would be a no-fault arbitration proceeding, as indicated above. Rather, the Court merely concludes that there is sufficient evidence in the record to support the application of the qualified privilege.

additional information, State Farm's letter indicated it had performed an investigation, and plaintiffs concede that they never requested any further details. While the Court is bothered by State Farm's failure to give some greater accounting for its decision, the Court is not persuaded that its failure to do so without a request suggests ill will. As to the language in the letters themselves, State Farm's limited disclosure concisely stated the conclusions of its investigation. While plaintiffs disagree with those conclusions, this Court does not have jurisdiction to revisit them for the reasons set forth above, and a disagreement about factual accuracy is not grounds for a finding of actual malice. *See Bol*, 561 N.W.2d at 150. Accordingly, the Court dismisses plaintiffs' defamation claim with prejudice.

## IV. TORTIOUS INTERFERENCE WITH CONTRACT AND PRODUCT DISPARAGEMENT

Plaintiffs also bring claims for tortious interference and product disparagement. These claims, however, are based on the allegedly defamatory statements made by State Farm in its claim-denial letters. (*See* Memo in Opposition to Summary Judgment, at 17-18.) As State Farm points out, a Minnesota plaintiff is not permitted to avoid defenses to a defamation claim by challenging the defamatory statements under another doctrine. *See Wild v. Rarig*, 234 N.W.2d 775, 793 (Minn. 1975) (dismissing a claim for wrongful interference with business relationships pursuant to the statute of limitations for defamation where the allegedly wrongful act "eventually stems from and grew out of the defamation"); *Zagaros v. Erickson*, 558 N.W.2d 516, 523 (Minn. Ct. App. 1997) (dismissing a negligence claim pursuant to an immunity defense available for defamation

where the claim "is essentially relabeling a defamation claim"). Here, plaintiffs cannot avoid the qualified privilege defense outlined above by recharacterizing their defamation claim as a claim for tortious interference or product disparagement. Accordingly, those claims are dismissed with prejudice.

## V. NEGLIGENCE

Finally, plaintiffs allege a claim for "negligent refusal of an insurance company to participate in the statutory scheme providing personal injury protection to insureds within the State of Minnesota." (Complaint at 5.) State Farm argues that this claim does not exist under Minnesota law, and should therefore be dismissed. Plaintiffs have not responded to this argument, and this Court has uncovered no indications that it is an available cause of action under Minnesota law. Accordingly, this claim is dismissed with prejudice.[8]

---

[8] The Court notes that plaintiffs have also argued that State Farm's motion for summary judgment is premature. First, plaintiffs note that a relevant case on the assignability of insurance benefits is currently pending before the Minnesota Supreme Court. *See Star Windshield Repair, Inc. v. W. Nat'l Ins. Co.*, 744 N.W.2d 237 (Minn. Ct. App. 2008), *rev. granted* (Minn. Apr. 29, 2008). However, because the Court concludes that it would not have jurisdiction over the parties' contract dispute even if the insureds' benefits were effectively assigned to the plaintiffs, it need not reach this issue. Second, plaintiffs indicate that further discovery will substantiate its suspicion that State Farm has communicated defamatory statements to additional third parties. In an affidavit submitted in opposition to summary judgment, plaintiffs' counsel contends that State Farm may be suggesting to other insurance companies that plaintiffs are violating the corporate practice of medicine doctrine. (Crosby Aff., at ¶6.) However, this allegation does not appear in plaintiffs' complaint. Moreover, neither plaintiffs' affidavit nor their brief provide any further context for this claim, or describe the specific defamatory comments or the circumstances in which they were conveyed. Finally, when asked to elaborate on this claim at oral argument, plaintiffs indicated that this suspicion is based merely on its knowledge of the sharing of information among other insurance companies. In those circumstances, the Court finds that it

(Footnote continued on next page.)

## ORDER

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that State Farm's Motion for Summary Judgment [Docket No. 12] is **GRANTED** as follows:

1. Plaintiffs' breach of contract claim (Count 1) is **DISMISSED WITHOUT PREJUDICE**.

2. Plaintiffs' negligence claim (Count 2), defamation claim (Count 3), tortious interference claim (Count 4), and product disparagement claim (Count 5) are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: July 24, 2008
at Minneapolis, Minnesota.

s/ John R. Tunheim
JOHN R. TUNHEIM
United States District Judge

(Footnote continued.)

would be inappropriate to allow plaintiffs to forestall summary judgment – in a case filed in September 2007 – based on this vague and belatedly-introduced allegation.